**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LABORERS' PENSION FUND and | ) | |
| LABORERS' WELFARE FUND OF THE | ) | |
| HEALTH AND WELFARE DEPARTMENT | ) | |
| OF THE CONSTRUCTION AND GENERAL | ) | Case No. 08 C 3728 |
| LABORERS' DISTRICT COUNCIL OF | ) | |
| CHICAGO AND VICINITY, and JAMES S. | ) | Honorable Judge Moran |
| JORGENSEN, Administrator of the Funds, | ) | |
| | ) | Magistrate Judge Cox |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BONGI CONSTRUCTION CORPORATION an | ) | |
| Illinois corporation, and BARRACUDA, LLC a | ) | |
| voluntarily dissolved Illinois limited liability | ) | |
| company, and GREGORY F. BONGIOVANNI, | ) | |
| individually, and PHILIP V. BONGIOVANNI, | ) | |
| individually, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' ANSWERS TO PLAINTIFFS' COMPLAINT

The Defendants, BONGI CONSTRUCTION CORPORATION, BARRACUDA, LLC, GREGORY F. BONGIOVANNI and PHILIP V. BONGIOVANNI, by their attorneys, Allocco, Miller & Cahill, P.C., answer Plaintiffs' Complaint as follows:

### COUNT I

**(Failure To Pay Employee Benefit Contributions)**

1.      Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § § 1132 (e)(1) and (2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, federal common law, and the court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

1

**ANSWER**:  Defendants admit the allegations contained in Paragraph 1.

2.      Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

**ANSWER**:  Defendants admit the allegations contained in Paragraph 2.

3.      The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. § 1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

**ANSWER**:  Defendants admit the allegations contained in Paragraph 3.

4.      Plaintiff James S. Jorgensen is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Jorgensen is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

**ANSWER**:  Defendants admit the allegations contained in Paragraph 4.

5.      Defendant Bongi Construction Corporation (hereinafter "Company 1"), is an Illinois corporation. Company 1 did and does business within this District and was at all times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

**ANSWER**:  Defendants admit Company 1 is an Illinois corporation and it did and does business within this District.  Defendants deny the remaining allegations in Paragraph 5.

6.      Defendant Barracuda, LLC, (hereinafter "Company 2"), is a voluntarily dissolved Illinois limited liability company. Company 2 voluntarily dissolved on March 17, 2008. Company 2 did and does business within this District and was at all times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

**ANSWER**:  Defendants deny that Barracuda, LLC currently does business.  Defendants deny Barracuda, LLC is an employer within he meaning of Sections 3(5) of ERISA or Section 301(a) of the LMRA.  Defendants admit the remaining allegations contained in Paragraph 6.

7.      The Union is a labor organization within the meaning of 29 U.S.C. § 185(a). The Union and Company 1 have been parties to successive collective bargaining agreements, the most recent of which became effective June 1, 2006. ("Agreement"). (A copy of the "short form" Agreement entered into between the Union and Company 1 which Agreement adopts and incorporates Master Agreements between the Union and various employer associations, and also binds Company 1 to the Funds' respective Agreements and Declarations of Trust is attached hereto as Exhibit A.)

**ANSWER**:  Defendants admit that the Union is a labor organization within the meaning of 29 U.S.C. § 185(a).  Defendants admit that the Union and Bongi Construction Corporation were parties to successive collective bargaining agreements between February 8, 1989 and May 31, 2001.  Defendants deny the remaining allegations contained in Paragraph 7.

8.    On March 6, 2001, Company 1 terminated the collective bargaining agreement effective May 31, 2001. Through Company 1's course of conduct, it bound itself to the successive collective bargaining agreements and Funds Agreements and Declarations of Trust by

a. submitting and paying 60 monthly benefits reports to Funds from June 1, 2001 through January, 2006; all of which included the following certification language:

EMPLOYER'S WARRANTY AND ACCEPTANCE: The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and general Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the trust agreements governing Laborer's Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

b.    permitting the Funds to audit its books and records to determine benefit contribution compliance through December 31, 2001 and paying delinquencies revealed by that audit;

c.    permitting the Funds to audit its books and records to determine benefit contribution compliance for the time period of January 1, 2002 through September 30, 2005 and paying delinquencies revealed by that audit; and

d.    permitting the Funds to audit its books and records to determine benefit contribution compliance for the time period of October 1, 2005 through December 31, 2007.

**ANSWER**:    Defendants admit Bongi Construction Corporation terminated the CBA effective May 31, 2001.  Defendants deny the remaining allegations contained in Paragraphs 8 (a)-(d).

9.    The Funds have been duly authorized by the Construction and General

Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Chicago Area Independent Construction Association ("CAICA"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), and the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), to act as an agent in the collection of contributions due to those funds.

ANSWER:  Defendants admit the allegations contained in Paragraph 9.

10.    The Agreement and the Funds' respective Agreements and Declarations of Trust obligate Company 1 to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, for the training fund and to submit monthly remittance reports in which Company 1, inter alia, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, contributions which are not submitted in a timely fashion are assessed 10 percent liquidated damages, and 20 percent as of June 1, 2007, plus interest.

ANSWER:  Defendants deny the allegations contained in Paragraph 10.

11.    The Agreement and the Funds' respective Agreements and Declarations of Trust require Company 1 to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

ANSWER:  Defendants deny the allegations contained in Paragraph 11.

12.    The Agreement obligates Company 1 to obtain and maintain a surety bond to insure future wages, pension and welfare contributions.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 12.

13.     Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, Company 1 has performed covered work during the months of February, 2007 forward and has:

(a)     failed to submit reports and contributions to Plaintiff Laborers' Pension Fund for the period of February, 2007 forward, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b)     failed to submit reports and contributions to Plaintiff Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the period of February, 2007 forward, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c)     failed to submit reports and contributions to Laborers' Training Fund for the period of February, 2007 forward, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries;

(d)     failed to report and pay all contributions owed to one or more of the other affiliated funds identified above for the period of February, 2007 forward, thereby depriving said fund(s) of contributions, income and information needed to administer said fund(s) and jeopardizing the benefits of the participants and beneficiaries; and

(e)    failed to obtain a surety bond.

**ANSWER**:  Defendants deny the allegations contained in Paragraphs 13(a)-(e).

14.    Company 1's actions in failing to make timely reports and contributions, and failing to obtain a bond violate Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA. 29 U.S.C. § 185.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 14.

15.    Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, and the terms of the Agreement and the Funds' respective Trust Agreements, Company 1 is liable to the Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid contributions, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 15.

## COUNT II

### (Failure To Pay Union Dues)

16.    Plaintiffs reallege Paragraphs 1 through 15 as though fully set forth herein.

**ANSWER**:  Defendants restate their answers to Paragraphs 1 through 15 of Count I.

17.    Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which should have been or have been deducted from the wages of covered employees.

**ANSWER**:  Defendants admit the allegations contained in Paragraph 17.  Defendants further answer that Bongi Construction Corporation is not signatory to the Agreement.

18.    Notwithstanding the obligations imposed by the Agreement, Company 1 has failed to withhold and/or report to and forward union dues that were deducted or should have been

deducted from the wages of its employees for the period of February, 2007 forward, thereby depriving the Union of income and information.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 18.

19.     Pursuant to the Agreement, Company 1 is liable to the Funds for the unpaid union dues, as well as liquidated damages, reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 19.

**COUNT III**

**(Alter Ego Liability)**

20.     Plaintiffs reallege Paragraphs 1 through 19 as though fully set forth herein.

**ANSWER**:  Defendants restate their answers to Paragraphs 1 through 19.

21. Defendant Company 2 is an alter ego of Company 1. Company 2 used and uses the same equipment formerly and currently used by Company 1; used and uses the same employees formerly and currently employed by Company 1; performed and performs the same type of work formerly and currently performed by Company 1; operates its business from the same location formerly and currently used by Company 1; uses the same phone number formerly and currently used by Company 1; is managed by and/or had its work supervised by the same personnel who managed and/or supervised and manage and/or supervise the work performed by Company 1; Company 2 uses the same financial institution as Company 1; Company 2 has commingled funds with Company 1 and paid debt of Company 1; Company 2 used and uses the same accountant that Company 1 did and does; Company 2 permitted the Funds, pursuant to the Agreement and Funds' respective Trust Agreements, to conduct a benefit contribution compliance audit.

**ANSWER**:  Defendants admit that Bongi Construction Corporation and Barracuda, LLC used the same accountant.  Defendants deny the remaining allegations contained in Paragraph 21.

22.     Gregory F. Bongiovanni and Philip V. Bongiovanni are the owners of Defendants Company 1 and Company 2.

**ANSWER**:  Defendants admit the allegations contained in Paragraph 22.

23.     Gregory F. Bongiovanni and Philip V. Bongiovanni direct, control, and manipulate the activities of Company 1 and Company 2.

**ANSWER**:  Defendants deny that Gregory F. Bongiovanni and Philip V. Bongiovanni manipulate the activities of Company 1 and Company 2 and admit the remaining allegations contained in Paragraph 23.

24.     Company 2 was formed by Gregory F. Bongiovanni and Philip V. Bongiovanni to avoid Company 1's obligations under the Agreement and the Funds' Agreements and Declarations of Trust.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 24.

25.     Company 2 was incorporated in the state of Illinois on February 13, 2004 and has the same Registered Agent, Francis J. Bongiovanni as Company 1.

**ANSWER**:  Defendants admit the allegations contained in Paragraph 25.

26.     As an alter ego of Company 1, Company 2 is bound to the terms of the Agreement and the Funds' respective Trust Agreements and therefore liable for Company 1's debts to the Funds.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 26.

## COUNT IV

### (Single Employer Liability)

27.     Plaintiffs reallege paragraphs 1 through 26 as though fully set forth herein.

**ANSWER**:  Defendants restate their answers to Paragraphs 1 through 26.

28.     Defendant Company 2 is a single employer with Company 1. Company 2 used and uses the same equipment formerly and currently used by Company 1; used and uses the same employees formerly and currently employed by Company 1; performed and performs the same type of work formerly and currently performed by Company 1; operates its business from the same location formerly and currently used by Company 1; uses the same phone number formerly and currently used by Company 1; is managed by and/or had its work supervised by the same personnel who managed and/or supervised and manage and/or supervise the work performed by Company 1; Company 2 uses the same financial institution as Company 1; Company 2 has commingled funds with Company 1 and paid debt of Company 1; Company 2 used and uses the same accountant that Company 1 did and does; Company 2 permitted the Funds, pursuant to the Agreement and Funds' respective Trust Agreements, to conduct a benefit contribution compliance audit.

**ANSWER**:  Defendants admit Bongi Construction Corporation and Barracuda, LLC used the same accountant.  Defendants deny all the remaining allegations contained in Paragraph 28.

29.     Gregory F. Bongiovanni and Philip V. Bongiovanni are the owners of Defendants Company 1 and Company 2.

**ANSWER**:  Defendants admit the allegations contained in Paragraph 29.

30.     Gregory F. Bongiovanni and Philip V. Bongiovanni direct, control, and manipulate the activities of Company 1 and Company 2.

**ANSWER**:  Defendants deny that Gregory F. Bongiovanni and Philip V. Bongiovanni manipulate the activities of Company 1 and Company 2 and admit the remaining allegations contained in Paragraph 30.

31.    Company 2 was formed by Gregory F. Bongiovanni and Philip V. Bongiovanni to avoid Company 1's obligations under the Agreement and the Funds' Agreements and Declarations of Trust.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 31.

32.    Company 2 was incorporated in the state of Illinois on February 13, 2004 and has the same Registered Agent, Francis J. Bongiovanni as Company 1.

**ANSWER**:  Defendants admit the allegations contained in Paragraph 32.

33. As a single employer with Company 1, Company 2 is bound to the terms of the Agreement and the Funds' respective Trust Agreements and therefore liable for Company 1's debts to the Funds.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 33.

### COUNT V

**(Failure to Pay Employee Benefits Contributions as Revealed by an Audit)**

34.    Plaintiffs reallege paragraphs 1 through 33 as though fully set forth herein.

**ANSWER**:  Defendants restate their answers to Paragraphs 1 through 33.

35.    Company 1 and Company 2 permitted the Funds to conduct an audit to determine benefit contribution compliance. A true and accurate copy of the audit is attached hereto as Exhibit B. Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, Company 1 and Company 2 performed covered work during the audit period of January 1, 2004 through December 31, 2007; Company 1 and Company 2 failed to keep books and records that identified hours worked and hourly rate of compensation; and Company 1 and Company 2 have:

(a)    failed to report and pay contributions in the amount of $113,754.19

owed to Plaintiff Laborers' Pension Fund for the audit period of January 1, 2004 through December 31, 2007, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b)     failed to report and pay contributions in the amount of $178,452.10 owed to Plaintiff Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the period of January 1, 2004 through December 31, 2007, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c)     failed to report and pay contributions in the amount of $4,596.44 owed to Laborers' Training Fund for the period of January 1, 2004 through December 31, 2007, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries;

(d)     failed to report and pay contributions in the amount of $2,992.35 owed to Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC") for the audit period of January 1, 2004 through December 31, 2007, thereby depriving the LDCLMCC of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries;

(e)     failed to report and pay contributions in the amount of $778.23

owed to Laborers' MCIAF Fund ("MCIAF") for the audit period of January 1, 2004 through December 31, 2007, thereby depriving the MCIAF of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries;

(f)    failed to report and pay contributions in the amount of $1,092.10 owed to Chicago Area Independent Construction Association ("CAICA") for the audit of January 1, 2004 through December 31, 2007, thereby depriving the LECET of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries

(g)    failed to report and pay contributions in the amount of $1,246.82 owed to Laborers' Employers' Cooperation and Education Trust ("LECET") for the audit of January 1, 2004 through December 31, 2007, thereby depriving the LECET of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries; and

(h)    failed to report and pay contributions in the amount of $111.18 owed to CISCO Uniform Drug/Alcohol Abuse Program ("CISCO") for the audit of January 1, 2004 through December 31, 2007, thereby depriving the CISCO of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries.

**ANSWER**:  Defendants deny all the allegations contained in Paragraph 35(a-h).

36.    Under the terms of the Agreements and the Funds' respective Agreements and Declarations of Trust, Company 1 and Company 2 owe liquidated damages plus interest on all unpaid contributions. Accordingly, Company 1 and Company 2 owe $15,759.67 in liquidated

damages to the Pension Fund, $23,997.06 in liquidated damages to the Welfare Fund, $629.48 in liquidated damages to the Training Fund, $299.24 in liquidated damages to the LDCLMCC Fund, $77.82 in liquidated damages to the MCIAF Fund, $109.21 in liquidated damages to the CAICA Fund, $124.68 in liquidated damages to the LECET Fund, and $11.12 in liquidated damages to the CISCO Fund, plus interest, on the unpaid contributions for the period of January 1, 2004 through December 31, 2007. A true and accurate copy of the audit summary sheet detailing the liquidated damages is attached hereto as Exhibit B-1.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 36.

37.     Under the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, Company 1 and Company 2 are liable for the costs of any audit which reveals unpaid contributions. Accordingly, Company 1 and Company 2 owe the Funds $1,305.50 in audit costs for the audit for the period of January 1, 2004 through December 31, 2007. See Exhibit B-l.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 37.

38.     Company 1 and Company 2's actions in failing to submit payment upon an audit to which they submitted their books and records violate Section 515 of ERISA, 29 U.S.C. § 1145.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 38.

39.     Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, and the terms of the Agreement and the Funds' respective Trust Agreements, Company 1 and Company 2 are liable to the Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid contributions, audit costs, interest, and reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 39.

## COUNT VI

### (Failure to Pay Union Dues as Revealed by an Audit)

40.     Plaintiffs reallege paragraphs 1 through 39 as though fully set forth herein.

**ANSWER**:  Defendants restate their answers to Paragraphs 1 through 39.

41.     Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which have been or should have been deducted from the wages of covered employees.

**ANSWER**:  Defendants admit that the Funds have been designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which have been or should have been deducted from the wages of covered employees, but deny that Defendants are signatory to the agreement and deny that Defendants are bound by the terms of the agreement.

42.     Notwithstanding the obligations imposed by the Agreement, Company 1 and Company 2 performed covered work during the audit period and Company 1 and Company 2 failed to withhold and/or submit payment of $16,162.34 in union dues that were or should have been withheld from the wages of employees for the period of January 1, 2004 through December 31, 2007, thereby depriving the Union of information and income. See Exhibit B.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 42.

43.     Pursuant to the Agreement, Company 1 and Company 2 owe liquidated damages on all late or unpaid dues. Accordingly, Company 1 and Company 2 owe $1,616.23 in liquidated damages for the unpaid union dues revealed as due and owing on the audit as well as audit costs, and liquidated damages on the unpaid dues, reasonable attorneys' fees and costs as the Union's

collection agent, and such other legal and equitable relief as the Court deems appropriate. See Exhibit B-1.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 43.

### COUNT VII

### (Piercing the Corporate Veil as to Gregory F. Bongiovanni)

44.     Plaintiffs reallege paragraphs 1 through 43 as though fully set forth herein.

**ANSWER**:  Defendants restate their answers to Paragraphs 1 through 43.

45.     Gregory F. Bongiovanni commingled Company 1 and Company 2's assets with his own assets.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 45.

46.     Gregory F. Bongiovanni diverted assets from Company 1 to Company 2 to perform covered work and avoid union obligations.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 46.

47.     Gregory F. Bongiovanni was personally enriched from disregarding the corporate identity of Company 1 and Company 2.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 47.

48.     Gregory F. Bongiovanni failed to maintain arm's length relationship among Company 1 and Company 2 in that he operated and operates both Company 1 and Company 2 out of the same office, used and uses the same phone numbers for Company 1 and Company 2, and subcontracted and subcontracts work from Company 1 to Company 2.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 48.

49.     Company 1 and Company 2 are undercapitalized in that both are unable to pay the contributions, dues and wages owed to their employees and to Funds.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 49.

50.     Gregory F. Bongiovanni intended to and did commit a fraud on Funds by depriving eligible laborers and their dependents of pension and welfare benefits.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 50.

51.     Gregory F. Bongiovanni knew the risk he was taking and to lessen his liability, he structured Company 2 as an LLC.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 51.

52.     Gregory F. Bongiovanni voluntarily dissolved Company 2 after Funds found Company 2 performing covered work using Company l's assets and demanded an accounting.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 52.

53.     Gregory F. Bongiovanni obtained a multi-year contract for Company 1 and Company 2 that involved holding Company 1 out as a union company and then using Company 2 to perform the covered work at a cheaper rate. Said contract involves performing covered work in residential areas and will continue through the year 2010.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 53.

54.     Gregory F. Bongiovanni poses a risk to the public in that to further monetarily benefit from his actions, he is purposefully using individuals untrained in safety to perform public utility maintenance and who will necessarily be working in and around high-voltage electrical lines and using potential injury-causing equipment in and around homes and sidewalks.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 54.

55.     Gregory F. Bongiovanni disregarded the corporate form of Company 1 and Company 2 to such an extent that the distinct identities of Company 1, Company 2, and Gregory F. Bongiovanni no longer exist. Further, Gregory F. Bongiovanni has been personally enriched from

disregarding the corporate identities of both companies to the extent that adhering to the corporate existence of the companies would sanction a fraud or promote an injustice.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 55.

## COUNT VIII

### (Piercing the Corporate Veil as to Philip V. Bongiovanni)

56.    Plaintiffs reallege Paragraphs 1 through 55 as though fully set forth herein.

**ANSWER**:  Defendants restate their answers to Paragraphs 1 through 55.

57.    Philip V. Bongiovanni commingled Company 1 and Company 2's assets with his own assets.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 57.

58.    Philip V. Bongiovanni diverted assets from Company 1 to Company 2 to perform covered work and avoid union obligations.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 58.

59.    Philip V. Bongiovanni was personally enriched from disregarding the corporate identity of Company 1 and Company 2.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 59.

60.    Philip V. Bongiovanni failed to maintain arm's length relationship among Company 1 and Company 2 in that he operated and operates both Company 1 and Company 2 out of the same office, used and uses the same phone numbers for Company 1 and Company 2, and subcontracted and subcontracts work from Company 1 to Company 2.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 60.

61.     Company 1 and Company 2 are undercapitalized in that both are unable to pay the contributions, dues and wages owed to their employees and to Funds.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 61.

62.     Philip V. Bongiovanni intended to and did commit a fraud on Funds by depriving eligible laborers and their dependents of pension and welfare benefits.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 62.

63.     Philip V. Bongiovanni knew the risk he was taking and to lessen his liability, he structured Company 2 as an LLC.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 63.

64.     Philip V. Bongiovanni voluntarily dissolved Company 2 after Funds found Company 2 performing covered work using Company 1's assets and demanded an accounting.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 64.

65.     Philip V. Bongiovanni obtained a multi-year contract for Company 1 and Company 2 that involved holding Company 1 out as a union company and then using Company 2 to perform the covered work at a cheaper rate. Said contract involves performing covered work in residential areas and will continue through the year 2010.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 65.

66.     Philip V. Bongiovanni poses a risk to the public in that to further monetarily benefit from his actions, he is purposefully using individuals untrained in safety to perform public utility maintenance and who will necessarily be working in and around high-voltage electrical lines and using potential injury-causing equipment in and around homes and sidewalks.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 66.

67.     Philip V. Bongiovanni disregarded the corporate form of Company 1 and Company 2 to such an extent that the distinct identities of Company 1, Company 2, and Gregory F. Bongiovanni no longer exist. Further, Gregory F. Bongiovanni has been personally enriched from disregarding the corporate identities of both companies to the extent that adhering to the corporate existence of the companies would sanction a fraud or promote an injustice.

**ANSWER**:  Defendants deny the allegations contained in Paragraph 67.


BONGI CONSTRUCTION CORPORATION,
BARRACUDA, LLC, GREGORY F.
BONGIOVANNI and PHILIP V. BONGIOVANNI


_____/s/  Todd A. Miller_____
One of Defendants' attorneys


Todd A. Miller
Kathleen M. Cahill
Allocco, Miller & Cahill, P.C.
3409 North Paulina Street
Chicago, Illinois 60657
(773) 868-4841

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney of record, hereby certifies that he electronically filed the attached, Answers to Plaintiffs' Complaint, with the Clerk of the Court using the CM/ECF system on or before the hour of 5:00 p.m. this 8th day of August, 2008, which will send notice of such filings to the following:

Jerrod Olszewski
Office of Fund Counsel
111 W. Jackson Blvd.
Suite 1415
Chicago, Illinois 60604

      /s/  Todd A. Miller
One of Defendants' attorneys

Todd A. Miller
Kathleen M. Cahill
Allocco, Miller & Cahill, P.C.
3409 North Paulina Street
Chicago, Illinois 60657
(773) 868-4841